IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRUCE WILLIAMS AND TRACY GIVAN                                          PLAINTIFFS

v.                                  No. 4:21-cv-762 JM

CITY OF LITTLE ROCK; KENTON BUCKNER,
Individually and in his official capacity; MARK
ISON; RUSS LITTLETON; AND MARK RAINEY                           DEFENDANTS

ORDER

This case arises out of the execution of a no-knock warrant by the Little Rock Police Department's SWAT team at the home of Plaintiffs Bruce Williams and Tracy Givan on August 16, 2016. Plaintiffs filed suit against Kenton Buckner, who was the chief of police at the time of the search, the City of Little Rock, and three of the city's detectives—Mark Ison, Russ Littleton, and Mark Rainey. The complaint alleges Fourth Amendment violations in obtaining the no-knock search warrant and in its execution; a *Monell* claim against the city; a §1983 civil conspiracy claim between Buckner and the detectives; a single act supervisory claim against Buckner; and Arkansas state law claims for malicious prosecution, false arrest, and intentional infliction of emotion distress.

There are two motions for summary judgment pending, one filed by the detectives, and one filed by the city and Buckner. (Doc. Nos. 25 and 28). In responding to the motions for summary judgment, Plaintiffs abandoned their state law claims, and the defendants are entitled to summary judgment on those claims. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009).

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that

the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.

Facts

The affidavits of Detectives Rainey and Littleton establish the following facts. (Doc. Nos. 27-1, 27-2). Rainey was contacted by a confidential informant ("CI") on July 25, 2016 who told him that Givan was selling marijuana from her home at 3301 South Battery Street. (Doc. No. 39-5). Rainey had worked with the CI before and believed the CI was reliable due to his successful track record in cases that resulted in convictions. He showed the CI a picture of Givan, and the CI identified her as the person selling marijuana out of the home. Rainey and Littleton used the CI to make a controlled buy of $100 worth of marijuana from Givan on July 25, 2016 at the residence located at 3301 South Battery Street. The CI told Rainey and Littleton that Givan opened the door after the CI knocked, the CI asked for $100 worth of marijuana, that the CI observed Givan go into a bedroom and return with the baggie of marijuana, and the CI paid Givan the $100. While Plaintiffs generally denied the facts surrounding the controlled buy (Doc. No. 40 at 4-8), and specifically whether Rainey and Littleton saw the CI actually walk on the porch and knock on their front door, they have not presented evidence to the Court to place these facts in genuine dispute.

Following the controlled buy, Rainey submitted a search warrant affidavit to Little Rock District Court Judge Alice Lightle that included the facts related to the controlled buy and the assertion that the CI has provided information to the Little Rock Police Department ("LRPD") on at least five occasions that has proven to be correct by independent sources and personal

observations. (Doc. No. 39-5). Rainey also stated that in his eleven-year career with the LRPD he has participated in a number of search and seizure warrants, the majority of which involved dynamic entries into residences "whereby the element of surprise was utilized to prevent the destruction of the evidence sought and to provide a greater degree of safety for both the executing officers and individuals present." Rainey also stated that "based on his experience that individuals dealing in illicit narcotics have access to firearms and will readily arm themselves to protect this contraband" and that executing the warrant without the knock-and-announce requirement "would greatly reduce the risk to and increase the safety of the executing officers and occupants . . .and the likelihood of the evidence sought being disposed of or destroyed would also be greatly diminished."

On July 26, 2016, Judge Lightle issued the search warrant as requested, which excluded the knock-and-announce requirement. "[A]ccording to LRPD policy," Rainey met with the SWAT team before the warrant was executed on the morning of August 10, 2016. (Doc. No. 27-1, ¶ 10.). No details of the meeting are included in the record.

The only evidence in the record about the details of the SWAT team's entry into the house comes from the depositions of Williams and Givan. (Doc. Nos. 39-2 and -3). Williams testified that on that day, he, Givan and Givan's two minor children[1] were in the house. He and Givan were in the living room at the front of the house and the children were in their respective bedrooms. The family was packed and ready to leave for Six Flags Over Texas. Givan heard something outside on the porch, which turned out to be the sound of their screen door being cut. When Williams looked out the window from his seat on the couch by the front door, he saw several men holding rifles. He testified that before he could get up, the men busted the door off

---

[1] At the time of the search, Givan's son was approximately fifteen and her daughter was approximately twelve. (Doc. No. 39-3 at 4, 13).

the frame with a "big banging sound" and shot "some smoke things" through the windows that burned holes in the carpet. Several men rushed in wearing ski masks and all black clothing . Officers also burst in through the back door of the house and the garage door, knocking all doors off their hinges. Williams and Givan testified that the officers did not announce that they were police when they entered. The officers were yelling and pointing guns at everyone. Williams and Givan were handcuffed and taken to the police station. Givan's son was initially handcuffed but was released when Givan told the officers he was a minor.

Rainey and Littleton searched the house. Williams told Rainey he had some marijuana in the master bathroom vanity. The search of the house yielded one jar and 16 baggies of marijuana, a digital scale, a .22 caliber revolver and unspent ammunition, and a box of unused plastic baggies. Williams told officers these items were his, and he ultimately pled guilty to possession of a controlled substance with intent to deliver and possession of drug paraphernalia.

As long as Rainey had been with the LRPD, officers were required to use the SWAT team to execute all search warrants, regardless of whether the officers have any knowledge of an occupant's violent tendencies or gun crime history. (Doc. No. 39-4 at 9, 13, 21). There was a "mandate" from the Office of the Chief of Police that the SWAT team execute all search warrants involving narcotics. (Doc. No. 42-21).

## The Detectives' Motion for Summary Judgment

In Count I of their complaint, Plaintiffs only make factual allegations against Detective Ison, alleging that he is responsible for the Fourth Amendment violations "occurring prior to the no-knock raid." (Doc. No. 1, ¶¶ 53-58; Doc. 39 at 2). As the detectives point out and Plaintiffs concede, Rainey was the lead detective in this case, and Ison was not involved at all. Plaintiffs, however, never moved for leave to amend their complaint to correct the name of the defendant.

4

This alone is reason to grant summary judgment as it relates to all of the alleged pre-execution violations. For the purpose of creating a more complete record, the Court will conduct an analysis of Rainey's conduct.

Rainey and Littleton filed a motion seeking qualified immunity on the claims that they violated Plaintiffs' Fourth Amendment rights in obtaining the search warrant and in executing it. They also seek summary judgment on the civil conspiracy claim.  To resolve the issue of qualified immunity, the Court undertakes a two-part inquiry to determine: (1) whether the facts viewed most favorably to the plaintiff make out a violation of a constitutional right, and (2) whether that right was clearly established at the time of the challenged conduct.  *Masters v. City of Indep., Missouri*, 998 F.3d 827, 835 (8th Cir. 2021); *Watson v. Boyd*, No. 20-1743, 2021 WL 2671317 (8th Cir. June 30, 2021).  The Court will undertake this analysis separately for each of the alleged Fourth Amendment violations.

<u>Obtaining the search warrant.</u>

The Fourth Amendment protects an individual's right to be free from unreasonable searches and seizures and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *United States v. Koons*, 300 F.3d 985, 990 (8th Cir. 2002); U.S. CONST. Amend. IV.  Williams and Givan had a constitutional right to be free from having a warrant issued in the absence of probable cause.  That right was clearly established by August of 2016, which leaves the question of whether viewing the evidence in the light most favorable to Williams and Givan, the detectives are entitled to summary judgment.

"Probable cause exists, if under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place

to be searched." *United States v. Wallace,* 550 F.3d 729, 732 (8th Cir.2008) (citations and internal quotation marks omitted). A warrant may be invalidated if a police officer deliberately or recklessly makes false statements to demonstrate probable cause for a warrant. *Franks v. Delaware,* 438 U.S. 154 (1978). To establish a *Franks* violation based on the omission of material facts, a plaintiff must prove: "(1) that facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *Z.J. by & through Jones v. Kansas City Bd. of Police Commissioners*, 931 F.3d 672, 686 (8th Cir. 2019) (quoting *United States v. Box*, 193 F.3d 1032, 1035 (8th Cir. 1999)). The omitted information must be "*clearly critical* to the finding of probable cause." *Hawkins v. Gage Cnty., Neb.*, 759 F.3d 951, 959 (8th Cir. 2014) (quoting *United States v. Reivich,* 793 F.2d 957, 961 (8th Cir.1986) (emphasis added). Similarly, to establish a *Franks* violation for including false statements, a plaintiff must prove "1) that a false statement knowingly and intentionally, or with reckless disregard to the truth, was included in the affidavit, and 2) that the affidavit's remaining content is insufficient to provide probable cause." *Williams v. City of Alexander, Ark.*, 772 F.3d 1307, 1311 (8th Cir. 2014) (quoting *United States v. Humphreys,* 982 F.2d 254, 259 n. 2 (8th Cir.1992)).

      Plaintiffs allege the following omissions in Rainey's affidavit invalidate the warrant: (1) no mention that the SWAT team would be involved; (2) no mention of the use of explosives to gain entry; (3) no mention of that children and a disabled person[2] could be present in the home; (4) no mention that other options existed besides the no-knock warrant. Plaintiffs have not established that these are material omissions that were intended to make, or with reckless

---

[2] Givan suffers from sickle cell anemia.

disregard made, the search warrant affidavit misleading. As to the decisions made by the SWAT team at the time the warrant was executed, there is no evidence that Rainey or Littleton had control over how the SWAT team executed the warrant. Furthermore, even if these challenged omissions had been included, Rainey's statements regarding the controlled buy would still have created a fair probability that evidence of a crime would be found at the residence.

Plaintiffs also identify nine alleged affirmative misrepresentations in the warrant application.[3] Plaintiffs' first alleged misrepresentation is that Rainey would knock and announce if he felt that he could safely do so upon arrival to the residence, when he and no intention of doing so. Second is that Rainey would personally assist in the execution of the search and seizure warrant, when he knew that the SWAT team would execute the warrant. Third is the statement that "the majority" of the numerous searches and seizures Rainey had participated in involved dynamic entry, when he knew that *every* warrant he had served was a no-knock warrant. These three statements relate to the intended execution of the warrant. The Fourth Amendment does not require that a search warrant specify the manner in which the warrant is to be executed; "[o]n the contrary, it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant" subject always to the protection against unreasonable searches and seizures. *Dalia v. United States*, 441 U.S. 238, 257, 99 S. Ct. 1682, 1693, 60 L. Ed. 2d 177 (1979). Furthermore, removing these statements would not affect a determination of probable cause.

The fourth and fifth alleged misrepresentations argued by Plaintiffs do not actually refer to any statements made by Rainey in his affidavit. In the fourth, Plaintiffs challenge the

---

[3] The Court has analyzed the nine misrepresentations put forth by Plaintiffs in their response, since it is Plaintiffs' burden to establish a *Franks* violation, but notes that they do not mirror those that Defendants assumed Plaintiffs might argue. (See Doc. No. 26 at 12.)

7

existence of exigent circumstances generally in LRPD narcotic detectives affidavits from 2015-2019. The fifth challenges "glaring deficits in the use and monitoring of CIs." In the absence of a specific statement in the affidavit alleged to be false, these arguments are not sufficient to establish a *Franks* violation.

For their sixth alleged misrepresentation, Plaintiffs challenge Rainey's affidavit statement that the element of surprise afforded by a no-knock warrant "would greatly enhance the safety to law enforcement officers executing the warrant and the occupants of the residence" and "would greatly reduce the risk and increase the safety" to officers and occupants. (Doc. No. 39-5 at 4). In support of their argument, Plaintiffs rely on a 2003 report written by Sergeant Steven McClanahan, a LRPD police administrator with SWAT training, titled "Tactical Explosive Breaching: An Introduction on the use of Explosives in Today's Police Department." (Doc. No. 39-7) and a 2014 Warrant Service SWAT Unit Training Memo (Doc. 39-8). McClanahan's report addresses the use of explosives—Rainey's challenged statements referred to no-knock warrants, not to the use of explosives. The training memo recites that it is "ALWAYS safer to bring suspect(s) out to us rather than go into the unknown after them," but Plaintiffs have submitted no evidence that Rainey received the SWAT training in 2014. These documents do not establish that Rainey's statements about officer safety were knowingly and intentionally false or made with reckless disregard to the truth.

The Court cannot distinguish Plaintiffs' seventh alleged misrepresentation—which also challenges Rainey's statement that risk of harm would be reduced with a surprise entry—from the sixth. To the extent Plaintiffs attempt in this section of their brief to challenge the statement that a no-knock warrant would prevent the destruction of evidence, they have failed to establish that this statement was knowingly false or made with reckless disregard for the truth.

In their eighth alleged misrepresentations, Plaintiffs challenge the assertion that the warrant affidavit was based on information from a reliable informant. Their arguments, however, refer only to statements made in other cases by Detective Mark Ison—who played no role in the present controversy. These arguments do not apply to any statements in Rainey's affidavit and cannot form the basis for a *Franks* challenge.

In their ninth alleged misrepresentation, Plaintiffs also challenge statements in an warrant affidavit made by Ison regarding a specific CI, Charles Robinson. As previously stated, Rainey was the detective who swore out the warrant affidavit. Furthermore, there is no proof that Robinson was the CI in this case as assumed by Plaintiffs "[b]ased on information and belief—as well as discovery documents and the rote process of elimination." (Doc. No. 39 at 28.) While Plaintiffs requested the Court review documents *in camera* and order the production of unredacted documents that might have disclosed the identity of the CI used in this case, the Court denied the motion as untimely. (Doc. Nos. 23, 34.) In his deposition, Rainey denied knowing Robinson. Plaintiffs also argue that regardless of who the CI was, LRPD CIs are generally unreliable and "Plaintiffs are entitled to the inference that the CI who allegedly implicated them is one of the overwhelming majority of the CIs who was terminated for obviously credibility reasons and, thus, it was known or should have been known that the CI was totally unreliable." (Doc. No. 39 at 32). Plaintiffs are, of course, not so entitled. Furthermore, Plaintiffs' argument as to the unreliability LRPD's CIs is based on the termination of a number of CI's in the two years *following* the issuance of the search warrant in this case.

In Rainey's warrant affidavit, he avowed that that the "reliable cooperating individual . . . has provided information to the Little Rock Police Department pertaining to Narcotics trafficking in the Little Rock, Pulaski County area on at least five (5) occasions" which . . . was proven

9

correct by other independent sources and personal observations and led to the arrest of at least five (5) subjects on felony charges." (Doc. No. 39-5 at 3). "The reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information." *United States v. Mayweather*, 993 F.3d 1035, 1044 (8th Cir. 2021), *reh'g denied* (May 19, 2021) (quoting *United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998)). "Information may be sufficiently reliable to support a probable cause finding if it is corroborated by independent evidence." *United States v. Knutson*, 967 F.3d 754, 758 (8th Cir. 2020) (quoting *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013). In this instance the information learned from the CI was corroborated by the controlled buy witnessed by Rainey and Littleton. Notwithstanding their arguments against LRPD's use of unreliable confidential informants in general, Plaintiffs have not established that Rainey's statements regarding the CI in this case were false or that they were made with reckless disregard for the truth.

The Court finds that the warrant affidavit established probable cause that drugs were being sold from Plaintiffs' home and that Plaintiffs have failed to establish a *Franks* violation. Rainey is entitled to qualified immunity on this claim.

Executing the no-knock warrant.

Next the Court must determine if Rainey and Littleton are entitled to qualified immunity on Plaintiffs' claim that their Fourth Amendment rights were violated in the execution of the no-knock warrant "despite the lack of a 'high risk situation' and other criteria." (Doc. No. 1 at 15).

The detectives argue that there was no Fourth Amendment violation in the execution of the warrant and that they relied in good faith on the warrant's no-knock authorization. "[A] warrant generally confers a "shield of immunity" to officers acting within the scope of its authority" on the premise that "where a neutral magistrate has issued a warrant is the clearest

indication that the officers acted in an objectively reasonable manner." *Kiesling v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546-548 (2012)). Officers are not entitled to the benefit of this shield when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt* at 457 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). For good reason, "the threshold for establishing this exception is a high one." *Ibid*.

*Wilson v. Arkansas*, 514 U.S. 927 (1995), established that the "common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment" and noted that circumstances may justify an unannounced entry. *Id.* at 929. In *Richards v. Wisconsin,* 520 U.S. 385 (1997), the Court rejected the adoption of a blanket exception to the knock-and-announce requirement in the execution of search warrant arising from a felony drug investigation, holding "[i]n order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.* at 394. The Court described the reasonable suspicion requirement as "not high" and determined that "[t]his standard—as opposed to a probable-cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns . . . and the individual privacy interests affected by no-knock entries." *Ibid.*

Rainey stated in his warrant affidavit that he had reasonable suspicion that the marijuana, which may have only been a "small quantity" like that purchased in the controlled buy, would likely be destroyed if police knocked and announced their presence. This belief was not unreasonable, based on the evidence that he had "encountered on many occasions narcotics

suspects destroying or attempting to destroy evidence during a search." (Doc. No. 27-1 at 5). This is sufficient to establish reasonable suspicion that the evidence the detectives were seeking would be destroyed if officers knocked and announced their presence.

Even if the Court had found that the threat of a potentially small stash of marijuana being destroyed did not justify dispensing with the knock-and-announce requirement, the detectives would still be entitled to qualified immunity unless their actions violated clearly established law. Plaintiff has pointed to no "bright line" established by a "robust consensus of cases of persuasive authority constituting settled law" that officers are not entitled to rely on a search warrant authorizing a no-knock entrance when small quantities of marijuana are involved. *See Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021).

Plaintiffs' response to the detectives' motion for summary judgment significantly narrows the scope of the qualified immunity analysis from that argued by the detectives. Plaintiffs frame the issue as whether it was clearly established in August of 2016 that "the use of flash bang grenades regardless of the circumstances at the target residence" was unconstitutional. (Doc. No. 39 at 40). Plaintiffs rely on *Z.J. by & through Jones v. Kansas City Bd. of Police Commissioners*, 931 F.3d 672 (8th Cir. 2019), in which the Eighth Circuit found that the SWAT team members were not entitled to qualified immunity because "it was clearly established in 2010 that the use of flash-bang grenades is unreasonable *where officers have no basis to believe they will face the threat of violence* and they unreasonably fail to ascertain whether there are any innocent bystanders in the area it is deployed." *Id.* at 685.

With this bright line established, the next inquiry is whether there was a constitutional violation in this instance. There is no evidence that the detectives were aware of a violent history by either plaintiff, no evidence of the presence of weapons, and no evidence that any surveillance

was conducted immediately prior to the execution of the warrant to determine who was present in the home. However, in the present case, as in *Z.J.*, a SWAT team executed the search warrant, not the detectives. (Doc. No. 27-1 at 5; 27-2 at 3). The plaintiffs in *Z.J.* named the SWAT team members as defendants as well as the detectives, and the Eighth Circuit held that the SWAT team's conduct in utilizing flash bang grenades under the circumstances was unconstitutional. Plaintiffs did not name the SWAT team members as defendants in this action. And there is no evidence that Rainey and Littleton are responsible for the decisions made by the SWAT team.[4] Littleton testified that "[t]his is what they did, the SWAT guys determine how they hit the house so it's for their safety." (Doc. No. 29-3 at 12).

In analyzing the detectives' claim of qualified immunity in *Z.J.*, the Eighth Circuit held that since § 1983 liability only attaches to individual actions, "the detectives only violated the Fourth Amendment if their own actions were directly responsible for a deprivation of the plaintiff's rights. They are not automatically responsible for all of the actions of the SWAT team officers." *Id.* at 688. The same analysis applies in this case, and the Court finds that Rainey and Littleton are entitled to qualified immunity on the claim that they violated Plaintiffs' Fourth Amendment rights by the use of flash bang grenades as the evidence does not establish that they were the ones who used the devices or made the decision to use them.

Plaintiffs state in the introduction to their response: "The issues—as pled throughout PLAINTIFFS' complaint are multiple and include nearly every aspect of DEFENDANTS' conduct in their alleged efforts to establish probable cause all the way through the August 10, 2016 no-knock raid in which they all participated, as a matter of course." (Doc. No. 39 at 1).

---

[4] Plaintiffs argue that Rainey "absolutely new explosive devices would be used in the warrant execution he sought" but the exhibits they cite, Exhibits 5 and 6 (Doc. No. 39) do not support this assertion. (Doc. 39 at 10).

However, the use of flash bang grenades is the only issue argued by Plaintiffs in response to the detectives' motion for summary judgment on the claims against them arising out of the search itself, the only issue they present any authority on. The Court finds that Rainey and Littleton are entitled to qualified immunity on Plaintiffs' claims of Fourth Amendment violations in the use of flash-bang grenades in the execution of the no-knock search warrant.

Civil conspiracy.

Because the Court has found that the detectives did not violate Plaintiffs' Fourth Amendment rights, the § 1983 claims for civil conspiracy claim necessarily fails. *See Kingsley v. Lawrence Cnty.*, 964 F.3d 690, 702 (8th Cir. 2020).

Plaintiffs' arguments on Rainey's handling of evidence.

Plaintiffs argue that Rainey maintained secret evidence files, withheld potentially exculpatory evidence from prosecutors and defense attorneys, and routinely destroyed evidence. This argument is based on Rainey's deposition testimony about using his cell phone to take photographs during the course of the investigation that he did not put in the official investigation file for Plaintiffs and the absence of a documented chain of custody of the marijuana found during the search. However, Plaintiffs did not assert a claim for § 1983 *Brady* violations in their complaint, and the arguments are not relevant to their Fourth Amendment claims.

### The City and Kenton Buckner's Motion for Summary Judgment

The City and Buckner in his official capacity.

Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and its progney, a city may be liable under § 1983 for a constitutional violation if the violation resulted from an official municipal policy or an unofficial custom or practice. The official capacity claim against Buckner is treated as a claim against the city. *Brockinton v. City of Sherwood, Ark.*, 503

F.3d 667, 674 (8th Cir. 2007). Before municipal liability can attach, "individual liability first must be found on an underlying substantive claim." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011). (quoting *McCoy v. City of Monticello,* 411 F.3d 920, 922 (8th Cir. 2005). Since the Court has found that the detectives are entitled to summary judgment on Plaintiffs' Fourth Amendment claims, there can be no municipal liability stemming from their actions. The city and Buckner in his official capacity are entitled to summary judgment.

<u>Buckner in his individual capacity.</u>

Kenton Buckner was chief of the Little Rock Police Department at the time of the search of Plaintiff's home in 2016. He had final decision-making authority to create policies within the LRPD. Viewing the facts most favorable to Plaintiffs, he had maintained an official policy that required LRPD officers to use the SWAT team to execute all search warrants when narcotics were involved; see April 7, 2014 internal memo referencing "a mandate from the Office of the Chief of Police that the SWAT team execute all search warrants." (Doc. 42-21; see also Plaintiffs' responses to the defendants statement of undisputed material facts, Doc. No. 43). In their arguments, Plaintiffs vigorously challenge the use of no-knock warrants by the LRPD. In doing so, they incorrectly conflate the policy of utilization of the SWAT team with the execution of no-knock warrants. However, Plaintiffs point to no evidence that the use of no-knock warrants was part of the policy established by Buckner. Plaintiffs refer to the April 7, 2014 memo as the "no-knock mandate" but the memo does not mention no-knock warrants. Nor does the cited testimony from Rainey's deposition reference a no-knock mandate as Plaintiffs argue. (See Doc. No. 39 at 12.)

To determine Buckner's claim for qualified immunity, the Court has to determine whether the policy to use SWAT to execute all narcotics warrants caused a Fourth Amendment

15

violation and whether that violation was clearly established in August of 2016. Assuming no-knock warrants equals using a SWAT team, Plaintiffs rely on *Richards v. Wisconsin*, 520 U.S. 385 (1997) to establish the bright line required in the second prong of the analysis. However, nothing in *Richards* forecloses a policy of using the assistance of a SWAT team to execute warrants in narcotics cases.

The Eighth Circuit has acknowledged that "[a]n officer's decision to authorize a SWAT team to execute a warrant can, in some cases, constitute a Fourth Amendment Violation." *Z.J.* at 688 (citing *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1189–92 (10th Cir. 2001). The court stated "it is clear the decision to send a SWAT team into a residence must be reasonable." *Id.* at 688. However, the Eighth Circuit declined to decide whether the detectives' decision to utilize the SWAT team in Z.J. was reasonable. The court called it a "close question" as to whether there had been a constitutional violation under the facts of the case, but concluded that even if there was a violation, the law was not clearly established that "using a SWAT team to execute a [knock-and-announce] search warrant under these circumstances violated the Constitution." *Id.* Likewise, Plaintiffs do not point to any law establishing that as of August of 2016 it was unreasonable to utilize a SWAT team in the execution of a no-knock warrant.

Therefore, without deciding if the existence of the policy was a constitutional violation, the Court finds that it was not clearly established that the policy violated the Fourth Amendment in the summer of 2016. Therefore, the Court finds that Buckner is entitled to qualified immunity.

Even if the Court accepted the conflation of no-knock warrants with the use of SWAT teams, the facts in *Richards* were that the investigating officers had applied for no-knock authorization in their warrant, that request was *rejected* by the magistrate, and the officers made

16

a decision in the course of executing the warrant to enter without knocking and announcing their presence. The United States Supreme Court reversed the decision of the Wisconsin Supreme Court that "police officers are *never* required to knock and announce their presence when executing a search warrant in a felony drug investigation." *Id.* at 387. In the present case, Rainey and Littleton applied for and *received* no-knock authorization from the magistrate. Nothing in Buckner's policy mandated the use of no-knock entry in the execution of all warrants involving narcotics *without* having prior no-knock authorization from a magistrate.

## Conclusion

The Motion for Summary Judgment filed by Detectives Ison, Littleton, and Rainey (Doc. No. 25) and the Motion for Summary Judgment filed by the Buckner and the City of Little Rock (Doc. No. 28) are GRANTED.

IT IS SO ORDERED this 13th day of February, 2022.

_____
UNITED STATES DISTRICT JUDGE